IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANA HOLLAND,                    )
                                 )
                Plaintiff,       )
                                 )
        v.                       )    No. 05 C 3255
                                 )
CITY OF CHICAGO, TIMOTHY         )    Judge Mark Filip
CULLINAN and NANCY               )
PIAKARASKI,                      )
                                 )
                Defendants.      )

MEMORANDUM OPINION AND ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff, Dana Holland ("Holland" or "Plaintiff"), initially filed suit alleging violations of

state law against the City of Chicago (the "City") and two Chicago Police Officers, Timothy

Cullinan ("Cullinan") and Nancy Piekarski ("Piekarski") (collectively, the "Defendant Officers,"

and with the City, all "Defendants") on July 29, 2003 in the Circuit Court of Cook County.

Plaintiff amended his complaint on April 29, 2005, when he added two federal claims.  (D.E. 5.)

That Second Amended Complaint[1] ("SAC") brought the following claims against Defendants:

malicious prosecution against the Defendant Officers ("SAC Count I"); malicious prosecution

against the City ("SAC Count II"); violation of equal protection against the Defendant Officers

under 42 U.S.C. § 1983 ("SAC Count III"); and a claim styled as a "custom and practice" claim

against the City ("SAC Count IV"), which appeared to be a *Monell*-type claim.  (D.E. 5.)  On

June 1, 2005, Defendants filed a Notice of Removal of the case to this Court pursuant to 28

---

[1] The "Second Amended Complaint" appears to have actually been the first amendment to Plaintiff's
original complaint.  The Court nonetheless employs the terminology used by Plaintiff in labeling his
complaint.

U.S.C. §§ 1441(b) and (c) and 28 U.S.C. § 1446. (D.E. 1.) Defendants moved to dismiss the SAC in its entirety. (D.E. 13.) By order of January 23, 2006, the Court granted Defendants' motion as to Plaintiff's federal claims (SAC Counts III and IV)—dismissing those claims without prejudice—and denied Defendants' motion as to Plaintiff's state law claims (SAC Counts I and II). (D.E. 26.)

Plaintiff thereafter filed a "Third Amended Complaint" ("TAC"), which again brings malicious prosecution claims against the Defendant Officers ("TAC Count I") and the City ("TAC Count II"). (D.E. 30.) The TAC also claims that Defendant Officers violated Plaintiff's equal protection and due process rights under 42 U.S.C. § 1983 ("TAC Count III") and that the City of Chicago similarly violated Plaintiff's equal protection and due process rights through certain "practices and/or customs," a claim which is now expressly styled as a *"Monell* claim" ("TAC Count IV"). (*Id.*) The case is before the Court on Defendants' motion to dismiss TAC Counts III and IV for failure to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 37.) For the reasons stated below, Defendants' motion to dismiss is denied in part and granted in part.

## ALLEGED FACTS[2]

On February 22, 1993, the Defendant Officers responded to a report that a woman was screaming. (TAC ¶ 10.) The Defendant Officers observed a car parked in the alley (the "Car") behind 7739 South Paulina in Chicago, and they saw a naked woman exit the passenger side of

---

[2] The following facts are taken from Plaintiff's Third Amended Complaint. For present purposes, the Court accepts the allegations as true, as precedent instructs. The Court takes no position on whether the allegations are actually well-founded.

2

the Car and run toward them. (*Id.*) The Defendant Officers also saw a man exit the driver's side of the Car and run away. (*Id.*) The woman, who will be referred to herein simply as Ms. Stanley, told the Defendant Officers that she had been raped. (*Id.*)

Cullinan pursued the man who exited the Car on foot, but soon lost sight of him. (*Id.* ¶ 11.) Cullinan returned to the Car where Piekarski was attending to Ms. Stanley, and he then walked southbound through the alley to the 7800 block of South Paulina in search of a knife used in the sexual assault. (*Id.* ¶¶ 11, 12.) As Cullinan was walking through the alley, he saw Plaintiff throwing away trash at 7821 S. Paulina. (*Id.* ¶ 12.)

Plaintiff alleges that he advised the Defendant Officers that he lived at 7821 South Paulina with his grandmother, aunt, uncle, and cousin. (*Id.* ¶ 13.) Earlier in the morning of February 22, Plaintiff had dozed off while looking after his grandmother. (*Id.*) Plaintiff was awakened by the arrival of his uncle, Gordon Bolden ("Bolden"), and after waking up, Plaintiff collected his belongings from his grandmother's room, including some trash and a dirty pair of work pants. (*Id.*) Before heading down to the basement where he slept, Plaintiff went out the back door of the house to switch the cable television connection so that he could watch cable from the basement and to throw away the trash that he had collected. (*Id.* ¶ 14.)

As Plaintiff walked toward the garbage cans, he saw the flashing lights of the police car parked in the 7700 block of South Paulina in the alley. (*Id.* ¶ 15.) Unaware of what was otherwise happening, Plaintiff continued to the garbage cans, where he was approached by Cullinan. (*Id.*) Prior to seeing Plaintiff, Cullinan had not been given any description of the suspect by Ms. Stanley. (*Id.* ¶ 16.) As Plaintiff stood over the garbage can, Cullinan drew his gun and told Plaintiff to drop what he was holding. (*Id.* ¶ 17.) Plaintiff complied, dropping

3

everything in his hands, including his work pants, into the garbage can. (*Id.*) Cullinan then frisked Plaintiff and searched his pockets. (*Id.* ¶ 18.)

While Cullinan was in the backyard with Plaintiff, two other Chicago Police officers ("Officer Bonaman" and "Officer Tully") arrived at the front of the house at 7821 South Paulina. (*Id.* ¶ 19.) They had followed footprints in the snow from the crime scene to the front steps and vestibule of the house. (*Id.*) Officer Bonaman joined Cullinan and Plaintiff in the backyard, where Officer Bonaman retrieved Plaintiff's work pants that he had been discarding; Officer Bonaman handed the pants to Cullinan. (*Id.* ¶ 20.) Cullinan pulled a wallet from one of the pants pockets and searched the wallet, finding various pieces of Plaintiff's identification. (*Id.*)

Cullinan seized Plaintiff and began walking him to the alley behind 7739 South Paulina, where Ms. Stanley was waiting with another police officer. (*Id.* ¶ 21.) While Cullinan and Plaintiff were walking, Officer Bonaman inspected the bottom of Plaintiff's shoes. (*Id.* ¶ 22.) She informed the Defendant Officers that Plaintiff's shoes did not match the snow prints that the police had followed. (*Id.*)

At the scene of the crime, Piekarski ran a check on the license plate of the Car and discovered that the Car was registered to Bolden, Plaintiff's uncle. (*Id.* ¶ 23.) Piekarski related that information to Cullinan. (*Id.*) During his detention, Plaintiff told the Defendant Officers that the Car did not belong to him, but rather to Bolden. (*Id.* ¶ 24.) Also at the scene, the Defendant Officers conducted a "show-up" of Plaintiff to Ms. Stanley, at which time Ms. Stanley informed the Defendant Officers that Plaintiff was not her assailant. (*Id.* ¶ 26.) The Defendant Officers then continued to detain Plaintiff, and handcuffed him and put him in the back of a police car. (*Id.* ¶ 27.) The Defendant Officers presented Plaintiff to Ms. Stanley once more, and

4

she again told them that Plaintiff was not the man who had assaulted her. (*Id.* ¶ 28.) (Other parts of the filings suggest that Ms. Stanley, who was understandably distraught, also did identify Plaintiff, but that fact does not appear within the allegations of the Complaint.) Plaintiff continued to be detained and, that same day, he was formally arrested for the sexual assault of Ms. Stanley. (*Id.* ¶¶ 28, 29.)

Subsequent to Plaintiff's arrest, employees of the City, including Ms. Pamela Fish, collected the DNA of Ms. Stanley, Plaintiff, and the individual who Plaintiff claims raped Ms. Stanley (that is, Plaintiff's uncle, Bolden). (*Id.* ¶¶ 31, 37.) After collecting this DNA, employees of the City, apparently supervised by Pamela Fish, conducted a comparison of Plaintiff's DNA and DNA collected as part of the investigation into the rape of Ms. Stanley. (*Id.* ¶ 32.) The City employees concluded that this DNA comparison did not exclude Plaintiff as the potential rapist of Ms. Stanley. (*Id.* ¶ 33.) Plaintiff was charged with multiple counts of aggravated criminal sexual assault against Ms. Stanley. (*Id.* ¶ 34.)

On March 6, 1993, while Plaintiff was detained on the sexual assault charges, detectives took Plaintiff out of the Cook County Jail and, without his consent, placed him in a lineup in which a victim identified him as a man who had attacked and robbed her in an incident separate from the sexual assault on which Plaintiff was being held. (*Id.* ¶ 34.) Plaintiff was convicted at a bench trial of this armed robbery and attempted first-degree murder and was sentenced on March 24, 1995 to a 28-year prison term. (*Id.* ¶ 35.) Subsequently, Plaintiff was convicted of three counts of aggravated criminal sexual assault in relation to the February 22, 1993 rape incident and was sentenced on April 29, 1997 to three consecutive 30-year prison terms. (*Id.* ¶ 35.)

Post-conviction DNA testing exonerated Plaintiff of the sexual assault of Ms. Stanley.

(*Id.* ¶ 36.) The testing established that Bolden (Plaintiff's uncle) was the man who had sexually assaulted Ms. Stanley. (*Id.*) Plaintiff alleges that, as early as 1993, the City could have conducted DNA testing that would have exonerated Plaintiff for the rape of Ms. Stanley, but that the City failed to do so "because of Plaintiff's race and color." (*Id.* ¶ 37.)

On October 4, 2002, Plaintiff filed a petition for relief from the criminal sexual assault judgment in the Circuit Court of Cook County pursuant to 735 ILCS 5/2-1401. (*Id.* ¶ 38.) The court, with the State's agreement, granted the 2-1401 petition and vacated Plaintiff's conviction on January 30, 2003. (*Id.*) The State then nolled the charges. (*Id.*) On February 11, 2003, the Circuit Court of Cook County also vacated the armed robbery and attempted first-degree murder convictions and ordered a new trial based on new evidence pursuant to Plaintiff's petition for relief from judgment under 735 ILCS 5/2-1401. (*Id.* ¶ 39.) The new trial resulted in Plaintiff's acquittal on the robbery and attempted murder charges. (*Id.*)

As described above, Plaintiff filed a complaint in the Circuit Court of Cook County on July 29, 2003 alleging two counts of malicious prosecution—as against the Defendant Officers and the City, respectively—stemming from his arrest and prosecution for the sexual assault of Ms. Stanley. (*See* D.E. 7, Ex. 1.) Plaintiff then filed his SAC with the Cook County Court on April 29, 2005, adding two federal claims for constitutional violations under 42 U.S.C. § 1983. (*See* D.E. 5.) Defendants removed the case to this Court and moved to dismiss the SAC in its entirety. (D.E. 7; D.E. 13.) By order of January 23, 2006, the Court granted Defendants' motion as to Plaintiff's federal claims (SAC Counts III and IV) without prejudice and denied Defendants' motion as to Plaintiff's state law claims (SAC Counts I and II). (D.E. 26.)

Plaintiff filed his Third Amended Complaint on February 15, 2006. (D.E. 30.) The TAC

alleges in TAC Count III that the Defendant Officers "deprived Plaintiff of his liberty without due process of the law and deprived him of equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States of America and 42 U.S.C. § 1983." (TAC ¶ 54.) As both constitutional violations are alleged, Count III seems to be a hybrid due process and equal protection claim brought under 42 U.S.C. § 1983. In support of these claims, Plaintiff alleges that "Plaintiff's race is a motivating factor for the decision to prosecute him for crimes he did not commit" (D.E. 30 ¶ 51), that "Plaintiff's race is a motivating factor for the decision not to properly and timely conduct DNA testing that could have exonerated him" (*id.* ¶ 52), and that "Plaintiff did not receive a fair trail (sic) in that the Defendants withheld exculpatory evidence because of his race." (*Id.* ¶ 53.) TAC Count IV (denominated as a *Monell* claim) alleges that the City's policies and practices facilitated constitutional violations in that they "deprived Plaintiff of his right to a fair trial in violation of the due process of law and deprived him of equal protection of the laws, in violation of the Fourteenth Amendments (sic) to the United States Constitution and 42 U.S.C. § 1983." (D.E. 30 ¶ 63.) Plaintiff alleges that the City's policies and practices include, *inter alia*, "[u]se of intimidation and coercion to illicit false statements and testimony from private citizens," "[f]ailure to properly hire, train, supervise, discipline, counsel and otherwise control police officers who engage in the abuse of police power . . . ," failure to "properly hire, train, supervise, discipline, counsel and otherwise control its employees who engage in creating and/or submitting erroneous, misleading and fraudulent DNA tests . . . ," "[p]rosecution of black males for crimes they did not commit," "[f]alsification and fabrication of DNA results to facilitate the conviction of innocent black males for crimes they did not commit," and "[w]ithholding of exculpatory evidence in cases involving black males." (D.E.

7

30 ¶ 59.) As Plaintiff recognizes by styling Count IV as a "42 U.S.C. § 1983 (*Monell* claim)" against the City, Count IV appears to be an action for municipal liability alleging constitutional violations as a result of City policies or practices under Section 1983.

Defendants have again moved to dismiss. (D.E. 37.) Defendants' motion seeks dismissal of Counts III and IV under Fed. R. Civ. P. 12(b)(6) for failure to state a cognizable cause of action on the grounds that: (1) Plaintiff's federal claims are inadequately pleaded (D.E. 38 at 3-7); and (2) Plaintiff's federal claims are barred by the applicable statute of limitations (*id.* at 7-10). As explained below, the motion is denied in part and granted in part.

## JURISDICTION

Pursuant to 28 U.S.C. § 1331, the Court has original jurisdiction over Plaintiff's federal claims in Counts III and IV, which arise under 42 U.S.C. § 1983. In addition, pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's state law claims in Counts I and II, because they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." *Id.*; *accord, e.g., Jinks v. Richland County, South Carolina*, 538 U.S. 456, 458 (2003) (discussing 28 U.S.C. § 1367(a)).

## LEGAL STANDARDS

"Whether a complaint sufficiently states a claim turns on whether it meets the general rules of pleading a claim for relief." *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." This, in turn, requires a plaintiff to allege no more than "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)

(citation omitted). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and view the allegations in the light most favorable to the plaintiff. *See, e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). Dismissal for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (internal quotation marks and citation omitted).

Defendants have moved to dismiss Plaintiff's Counts III and IV under Rule 12(b)(6), arguing that Plaintiff's federal claims are inadequately pleaded and barred by the statute of limitations. (*See* D.E. 38.) In considering the propriety of raising these sorts of issues in a Rule 12(b)(6) motion, Seventh Circuit precedent instructs that the statue of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and that "[c]omplaints need not anticipate or attempt to defuse potential defenses." *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). However, "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (collecting authorities). Put differently, "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (citing *Walker*, 288 F.3d 1005). Therefore, before discussing whether Counts III and IV are adequately pleaded, the Court analyzes whether, even if they are, they are time-barred and must be dismissed, as Defendants contend.

9

## DISCUSSION

I.   Plaintiff's Section 1983 Due Process Claim Did Not Accrue Until His Conviction Was Vacated

As the Court discussed in its previous decision on Defendant's motion to dismiss Plaintiff's Second Amended Complaint (D.E. 26), Plaintiff's Section 1983 claims are not necessarily time-barred just because they were not brought within two years of his conviction on aggravated criminal sexual assault charges in 1997, as the Defendants have argued. (*Id.* at 6-7.) In fact, on the materials presented to date, the Court finds that Plaintiff's Section 1983 due process claims did not accrue until Plaintiff's conviction was vacated on January 30, 2003.[3]

The Seventh Circuit "has consistently held that the appropriate statute of limitations for § 1983 cases filed in Illinois is two years . . . ." *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (collecting cases). Federal law defines the accrual of the claim for a constitutional tort under Section 1983. *See, e.g., Gonzalez v. Entress*, 133 F.3d 551, 554 (7th Cir. 1998) (collecting cases). Under *Heck v. Humphrey*, 512 U.S. 477 (1994), if a judgment for the plaintiff on his Section 1983 claims "would necessarily imply the invalidity of his conviction or sentence," the statute of limitations does not begin to run until the plaintiff's conviction or sentence has been favorably terminated. *Id.*, 512 U.S. at 487.[4] Thus, to toll the statute of limitations, a Section

---

[3]   As discussed, *infra*, the Court holds that Plaintiff's Section 1983 equal protection claims are time-barred even if they did not accrue until his conviction on aggravated criminal sexual assault charges was vacated, the date Plaintiff urges. (D.E. 49 at 4-5.) The Court therefore need not decide when the equal protection claims accrued.

[4]   The Court respectfully rejects Defendants' sweeping argument that the recent Seventh Circuit decision in *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006), "may have suggested a different position with regard to the accrual of § 1983 claims" generally. Instead, the *Wallace* Court explicitly limited its analysis to Fourth Amendment claims, holding that "[w]hen a person's Fourth Amendment rights have been violated by a false arrest, the injury occurs at the time of the arrest." *Id.* at 425. The *Wallace* Court went on to explain that the general rule announced in *Heck* that a "constitutional claim

10

1983 plaintiff first "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck*, 512 U.S. at 486-87.

As an initial matter, the Court notes that Defendants do not dispute that Plaintiff's conviction has been "declared invalid by a state tribunal authorized to make such determination," one of the *Heck* prerequisites under the circumstances. *Id.* (*See* D.E. 38; D.E. 51.) More specifically, Defendants do not challenge Plaintiff's assertion that "[o]n January 30, 2003, with the State's agreement, a Cook County Circuit Judge . . . vacated the convictions." (D.E. 30 ¶ 38.) The Court therefore accepts Plaintiff's assertion as true and proceeds to analyze whether a judgment for the Plaintiff on his Section 1983 due process claims "would necessarily imply the invalidity" of his conviction or sentence. *Accord, e.g., Howard v. City of Chicago*, No. 03 C 8481, 2004 WL 2397281, at *6 (N.D. Ill. Oct. 25, 2004) (finding that "Defendants seem to agree that Howard's pardon on grounds of innocence invalidated his conviction under the *Heck* guidelines" and therefore proceeding with the *Heck* analysis).

The Court finds that the principles enunciated in *Heck* operate to postpone the accrual of Plaintiff's Section 1983 due process claims, which, according to his TAC, are based on conduct that occurred prior to his conviction for aggravated criminal sexual assault in 1997. *See, e.g.,*

---

that would undermine a criminal conviction if vindicated cannot be brought until the defendant's conviction is nullified . . . works perfectly well for complaints like the ones about the knowing destruction of evidence and illegal identification procedure raised in *Heck*. . . ." *Id.* Because Plaintiff does not seem to have alleged a Fourth Amendment claim in his TAC, any analysis relating to such a claim seems unnecessary (and, as the Court specifically advised in its previous order, "*Heck* would be unlikely to toll the statute of limitations for any amended claim brought by Plaintiff based on false arrest."). (D.E. 26 at 7 (discussing applicable precedent).)

*Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) (holding that a Defendant who did not

file Section 1983 claims until after he was pardoned from his murder conviction based on

innocence did "have a due process claim in the original sense of that phrase—he did not receive a

fair trial if the prosecutors withheld material exculpatory details," the accrual of which claims

had been tolled until his pardon).

As discussed above, Plaintiff asserts, in TAC Counts III and IV, that Defendants

"withheld exculpatory evidence" and "did not timely conduct DNA testing that could have

exonerated him," and, as a result, "Plaintiff did not receive a fair trail (sic)." (D.E. 30 ¶¶ 52-53.)

Defendants argue that this § 1983 claim of a Fourteenth Amendment due process violation is

time-barred because the allegedly violating actions would have taken place no later than 1997,

and certainly well more than two years ago, the applicable statue of limitations under Illinois law.

(D.E. 38 at 8.) Precedent instructs, however, that in cases such as these, where a Plaintiff alleges

that defendants withheld exculpatory information from him that he was entitled to under *Brady v.

Maryland*, 373 U.S. 83 (1963), "the failure to turn over the information necessarily raised

questions about the validity of [the] conviction." *See, e.g., Howard*, 2004 WL 2397281, at * 8

(citing *Newsome*, 256 F.3d at 752). Accordingly, the accrual of Plaintiff's due process claims

was postponed by *Heck* until Plaintiff's conviction was vacated on January 30, 2003. *See id*;

*accord Newsome*, 256 F.3d at 752 (holding that the failure to disclose exculpatory evidence

"occurred at trial (for *Brady* identifies a trial right) and therefore the due process claim's accrual

was postponed by *Heck* until the pardon."). The statute of limitations on Plaintiff's due process

claims therefore did not begin to run until January 30, 2003.

II.    Plaintiff's Section 1983 Claims May Relate Back to The Date of His Original State Court
       Filing

Defendants again argue, as they did in support of their motion to dismiss Plaintiff's

Second Amended Complaint, that even if Plaintiff's § 1983 claims based on a violation of due

process and equal protection did not accrue until Plaintiff's aggravated criminal sexual assault

convictions were vacated on January 30, 2003, the two-year limitations period applicable to

Section 1983 claims in Illinois expired on January 30, 2005—or some three months before

Plaintiff filed his SAC containing federal claims in state court on April 29, 2005. Defendants

claim that Plaintiff's federal claims are therefore time-barred and must be dismissed. (D.E. 38 at

9-10.) As the Court explained in its January 23, 2006 order, however, this is not necessarily the

case. (D.E. 26 at 6-7.)

Under Federal Rule of Civil Procedure 15(c)(2), a claim in an amended complaint relates

back to the date of the original pleading whenever "the claim . . . asserted in the amended

pleading arose out of the conduct, transaction or occurrence set forth . . . in the original

pleading." *Id.*; *see, e.g.*, *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) ("Generally,

an amended complaint in which the plaintiff merely adds legal conclusions or changes the theory

of recovery will relate back to the filing of the original complaint if the factual situation upon

which the action depends remains the same and has been brought to defendant's attention by the

original pleading.") (internal quotation marks and citations omitted); *id.* (finding that an amended

complaint may only relate back if the original complaint was timely filed); *Donnelly v. Yellow*

*Freight System, Inc.*, 874 F.2d 402, 410 (7th Cir. 1989) (concluding that amended complaint filed

in federal court that alleged Title VII violations was timely filed because it related back to

13

original complaint filed in state court alleging state law violations based on same facts and circumstances). However, as then-District Judge Ann Williams explained, "Rule 15(c) does not allow relation back unless the original complaint gave the Defendant 'fair notice' of the defense or claim in the amended complaint." *Kern v. Village of Woodridge*, No. 97 C 7620, 1999 WL 519050, at *4 (N.D. Ill. July 13, 1999) (Williams, J.).

Although he was invited to do so by the Court in its January 23, 2006 order, Plaintiff has made no argument as to how or why his Section 1983 claims relate back to his original state court complaint. However, with all respect, Defendants also have not made a creditable argument that the amended due process claims at least did not arise "out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Instead, Defendants argue that "Plaintiff's federal claims cannot 'relate back' to the date he filed his original state law complaint since it is impossible to tell what 'acts' by the Defendant Officers Plaintiff complains about in the first place." (D.E. 51 at 8.) In analyzing the issue without the aid of detailed briefing, the Court finds, as discussed below, that Plaintiff's Section 1983 claims that Defendants violated his constitutional right under the Fourteenth Amendment to due process relate back to the date he filed his original state court complaint (*i.e.*, July 29, 2003), and are therefore not time-barred.[5] In contrast, because Plaintiff's original complaint contains no mention of any alleged racial discrimination by Defendants, nor even Plaintiff's race at all, his Section 1983 claims for violation of his rights under the equal

---

[5] Plaintiff's original state court complaint was attached to Defendants Notice of Removal (D.E. 1 at 21) and the Court takes judicial notice of its contents. *See Brown v. Chrysler Financial Services*, No 05 C 1117, 2006 WL 850881, at *2-3 (N.D. Ill. March 24, 2006) (collecting cases)); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n. 4 (7th Cir. 2000).

protection clause of the Fourteenth Amendment are time-barred and defendant's motion to dismiss is granted with prejudice as to such claims.

III.   Plaintiff's Federal Due Process Claims Relate Back to His Original State Court Complaint

Plaintiff's original state court complaint alleges that Ms. Stanley informed the Defendants that "Plaintiff was not her assailant" when he was presented to her at the crime scene on February 22, 1993. (D.E. 1 at 25.) The original state court complaint also referenced "post-conviction DNA testing." (*Id.*) It is unclear when this testing occurred, but DNA testing (or lack thereof) also is part of the due process/*Brady* claim at issue now in the TAC. As discussed in more detail below, although Plaintiff did not allege that Defendants violated his rights to due process in his original state court complaint, a generous reading of that document indicates that the same or similar intertwined facts support Plaintiff's due process claim and, as a result, the TAC merely "adds legal conclusions or changes the theory of recovery." *Henderson*, 253 F.3d at 931. Thus, to the extent that the TAC adequately alleges that Defendants violated Plaintiff's due process rights (and, the Court finds, *infra*, that it does), such claims relate back to Plaintiff's original state court complaint and are not time-barred. *See, e.g.*, *Donnelly*, 874 F.2d at 410 (citing Fed. R. Civ. P. 15(c)).

IV.   Plaintiff's Section 1983 Equal Protection Claims Do Not Relate Back to His Original State Court Complaint

As previously stated, the Court assumes *arguendo* that any Section 1983 Equal Protection claims did not accrue until Plaintiff's convictions concerning the rape of Ms. Stanley were vacated in the state courts. Nonetheless, in contrast to the result with the due process/*Brady* claims, to the extent Plaintiff's TAC alleges colorable claims under Section 1983 that Defendants

15

violated Plaintiff's right to equal protection by discriminating against him based on his race, these claims do not relate back to the filing of Plaintiff's original state court complaint and are therefore time-barred. *See generally Walden v. City of Chicago*, 391 F. Supp. 2d 660, 678 (N.D. Ill. 2005) ("Where there are a number of acts that are the subject of other Section 1983 claims (*e.g.*, false arrest, Fifth Amendment violation, *etc.*), some of which are time-barred and some of which are not, a plaintiff may not assert a Section 1983 equal protection claim for the time-barred applications") (citing *Hobley v. Burge*, No. 03 C 3678, 2004 WL 2658075, at *8 (N.D. Ill. Oct. 13, 2004)). Even reading the state court complaint generously, Plaintiff's state court complaint does not allege or even indirectly imply that Defendants discriminated against him based on his race when investigating the sexual assault with which he was charged and convicted, or at any other time. It does not allege that Defendants had a policy or practice of discriminating against African-American males when investigating crimes. It does not even allege that Plaintiff is African-American, nor does it mention the race of any other individual involved. (D.E. 1 at 21-28.) Without any of these allegations, the Court cannot fairly conclude that Plaintiff's state court complaint would have put Defendants on any meaningful notice of Plaintiff's present putative claim that Defendants discriminated against him based on his race. *See, e.g., Roberson v. Alliance Midwest Tubular Products, Inc.*, No. 99 C 7461, 2004 WL 1102310, at *3 (N.D. Ill. April 28, 2004) ("While simply saying, 'the defendant discriminated against me on the basis of my race' is enough to state a claim for race discrimination, the original complaint did not even contain this rudimentary information" and thus the amended claim for race discrimination under Title VII did not relate back to the original complaint) (internal citation omitted).

Put differently, Plaintiff's amended equal protection claim does more than add a legal

16

conclusion or theory of recovery to the facts asserted in his original state court complaint. The claim itself rests on entirely new facts and allegations. As such, it is not held to relate back to Plaintiff's original state court complaint. *See, e.g., King v. City of Chicago*, No. 04 CV 7796, 2006 WL 1120447, at *2-3 (N.D. Ill. April 26, 2006) (holding that amended claim alleging violation of First Amendment rights did not relate back to original complaint of racial discrimination where "[t]he original complaint alleged only discrimination and retaliation based upon King's race. Even viewed in the light most favorable to King, keeping in mind that he was *pro se* at the time, the original complaint is devoid of even a hint that King's claims involved retaliation based on politics."). To the extent that Plaintiff's TAC adequately alleges a Section 1983 claim that Defendants violated his Fourteenth Amendment right to equal protection, and the Court makes no finding as to whether it does, it is time-barred because it was not filed before the expiration of the appropriate statute of limitations. *See, e.g., Johnson v. City of Joliet*, No. 04 CV 6426, 2006 WL 1793574, at *9 (N.D. Ill. June 27, 2006) (holding that amended claim that defendants commenced proceedings against plaintiff in retaliation for her public criticism of them, in violation of her first amendment rights, did not relate back to her original complaint, where the original complaint "contains no mention of her public criticism . . . or any retaliation based upon such criticism"). Defendants motion to dismiss is granted with prejudice as to any such time-barred claims.[6]

---

[6] The Court accepts Plaintiff's representation that his convictions concerning the 1993 rape were vacated on January 30, 2003. (TAC ¶ 38.) As a result, the two-year limitations period concerning formerly *Heck*-barred Section 1983 claims would expire on or about January 31, 2005. Plaintiffs Second Amended Complaint (the first that advanced the Section 1983 claims) was filed on or about April 29, 2005—or at a date beyond the two year limitations period. (D.E. 5.) The Court therefore analyzes the "relation back" issue with regard to the original state complaint, which was filed within the two-year period. *Accord Donnelly*, 874 F.2d at 410

V.    Count III Adequately Pleads a Due Process Claim Against The Defendant Officers

As described above, Plaintiff claims in TAC Count III that the Defendant Officers "deprived Plaintiff of his liberty without due process of the law and deprived him of equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States of America and 42 U.S.C. § 1983." (TAC ¶ 54.) In additional support of the due process component of this seemingly hybrid claim, Count III alleges that "Plaintiff did not receive a fair trail (sic) in that the Defendants withheld exculpatory evidence because of his race." Where a due process claim, like this one, is predicated upon a claim that a plaintiff was denied a right to a fair trial due to a defendant's withholding of evidence, precedent instructs that such claims should be analyzed under the framework set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). *See, e.g.*, *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005); *Newsome*, 256 F.3d at 752.

"In practical terms, a Brady violation has three components: (1) the evidence at issue must be favorable to the accused, meaning either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued." *Patterson v. Burge,* 328 F. Supp. 2d 878, 889 (N.D. Ill. 2004) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). In such cases, "the plaintiff must allege that the officers withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." *Ienco v. City of Chicago*, 286 F.3d 994, 998-99 (7th Cir. 2002) (citing *Newsome, supra*). The Seventh Circuit instructs that "[e]vidence is suppressed for *Brady* purposes when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2)

(concluding that amended complaint filed in federal court that alleged Title VII violations was timely filed because it related back to original complaint filed in state court alleging state law violations based on same facts and circumstances).

18

the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Ienco*, 429 F.3d at 683 (collecting cases).

The TAC adequately pleads a due process violation. Plaintiff alleges in the TAC that criminal charges were initiated against him for the sexual assault of Ms. Stanley (D.E. 30 ¶ 34) and that he was confined on these charges for more than nine years, from as early as February 22, 1993 (*id.* ¶ 29) until as late as January 30, 2003 (the date Plaintiff alleges the State of Illinois nolled the aggravated criminal sexual assault charges) (*id.* ¶ 38)) because "Defendants withheld exculpatory evidence" from him. (*Id.* ¶ 53; *see also id.* ¶ 54 (alleging that Plaintiff was thereafter deprived of his liberty without due process of law).)

The Defendant Officers argue that these allegations are inadequate to state a due process violation because Plaintiff does not specifically allege "WHAT Defendant Officers withheld from him." (D.E. 38 at 6 (capitalization in original); D.E. 51 at 6 (same).) However, reading the TAC favorably to Plaintiff and making all reasonable inferences in his favor, as must be done with a motion to dismiss, the Court respectfully disagrees. First, Plaintiff does allude to at least some specific evidence. In this regard, Plaintiff alleges that in 1993, DNA samples were collected from Ms. Stanley, Plaintiff, and the individual that he claims actually raped Ms. Stanley (Plaintiff's uncle). (D.E. 30 ¶ 37.) Plaintiff further alleges that Defendant City of Chicago "could have conducted DNA testing that would have exonerated Dana Holland for the rape of Dionne Stanley as early as 1993, but failed to do so." (*Id.*) (Defendants do not discuss whether the demands of due process require the prosecution to affirmatively test such DNA evidence—which presumably was equally available to both sides through legal process or court order—so the Court does not address this issue in evaluating the motion to dismiss.) Second, the

19

Defendant Officers offer no authority for the proposition that a plaintiff advancing a *Brady* claim must specifically detail what evidence allegedly was suppressed. Plaintiff alleges broadly that he "did not receive a fair trail (sic) in that Defendants withheld exculpatory evidence." (*Id.* ¶ 53.) The Court must accept this allegation as true on a motion to dismiss, and it provides the Defendant Officers with fair notice of the *Brady*/due process claim against them. While the Defendant Officers may (or may not) ultimately be correct that the claim is flawed in part or in whole because the Defendant Officers, against whom the claim is brought, do not appear to have been involved in either the collection of the DNA samples or testing decisions related to it, Plaintiff need not plead or prove such facts at this time. Given the need to afford a plaintiff the benefit of all reasonable inferences at this stage of the case, the Court finds that Plaintiff has sufficiently alleged that Defendant Officers withheld and suppressed at least some exculpatory evidence, thereby adequately stating a due process claim.[7]

In addition, a reasonable inference could be made from the TAC that Plaintiff is alleging that "Defendant [O]fficers are guilty of failing to disclose that the victim refused to identify

---

[7] The TAC alleges that the Defendant City of Chicago "could have conducted" this DNA testing as early as 1993, "but failed to do so because of Plaintiff's race and color." (D.E. 30 ¶ 36.) Plaintiff similarly alleges racial bias as a basis or motivation for a number of Defendants' alleged actions that produced the asserted denial of due process. As discussed above, the Court finds Plaintiff's claim(s) that his rights to equal protection were violated because of his race time-barred and dismisses them. To the extent that Plaintiff alleges that Defendants denied him due process claim in an evidentiary sense, but it is not a separate claim based on any alleged equal protection violation(s). *See, e.g., Walden*, 391 F. Supp. 2d at 678. Ultimately, this issue is likely of academic consequence only in terms of practical effect; the government cannot suppress material exculpatory evidence from *any* criminal defendant, regardless of that individual's race, and a criminal defendant need not overcome the *additional* hurdle of showing that exculpatory evidence was withheld for racial reasons if it was unlawfully withheld in the first place. Put differently, it is the withholding of the evidence itself that is unlawful, assuming all other aspects of the *Brady* claim are shown, irrespective of whether race was involved or not.

Plaintiff as her rapist." (D.E. 49 at 4.)[8] Plaintiff alleges in the TAC that the "Defendants

conducted a show-up of Plaintiff to the victim," that "[s]he informed Defendants that Plaintiff

was not her assailant" and that thereafter Defendants "further detained Plaintiff, handcuffing him

and placing him in the back of a police car." (D.E. 30 ¶¶ 26, 27.) Plaintiff further alleges that

"Defendants presented Plaintiff to the victim once more. She again told the Defendants that

Plaintiff was not the man who had assaulted her. Despite the victim's persistent statements,

Plaintiff's detainment continued." (*Id.* ¶ 28.) While these assertions are again somewhat bare-

bones, the Court can reasonably infer that Plaintiff is alleging that the Defendant Officers

withheld this material exculpatory evidence from Plaintiff prior to his trial on sexual assault

charges. It is often the case that the participant in a "show-up" (*i.e.*, the criminal suspect) is not

informed of the victim's response. The Court can reasonably assume (and, under applicable

precedent, must assume) that "Plaintiff would be unable to see the circumstances surrounding the

identification, and what, if any, contact the Officers had with [the crime victim]. He also would

not be privy to any conversations" the police had with the victim before or after the show-up

viewing. *Sellers v. Bragg*, No. 04 C 3663, 2005 WL 1667406, at *5 (N.D. Ill. July 13, 2005)

(discussing traditional methods for line-up procedures and denying motion to dismiss a due

process claim). Defendant Officers have been put on notice of Plaintiff's due process claim by

---

[8] It is true, as Defendants argue, that the Court's analysis on a motion to dismiss is typically confined to "the four corners of the [third amended] complaint" (D.E. 51 at 7), and, accordingly the Court confines its analysis of the TAC's adequacy in stating a claim to the allegations contained therein. *See Rosenthal Collins Group, LLC v. Trading Technologies Int'l, Inc.*, No. 05 C 4088, 2005 WL 3557947, at *1 (N.D. Ill. Dec. 26, 2005) ("Under Rule 12(b)(6) analysis, we will not look beyond the four corners of the complaint in determining whether plaintiff has stated a claim.") (citing *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)); *accord, e.g., Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (stating that a complaint may not properly be amended by a response to a motion to dismiss); *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (same).

the allegations in the TAC and the parties respectively may conduct discovery on the issue. "For now, however, the Court draws all reasonable inferences in favor of Plaintiff. And it is an inference within the realm of plausibility that exculpatory information was suppressed from Plaintiff" based on the averments in the TAC. *Id.*

VI.    Count IV States A *Monell* Claim Against The City Based on Alleged Due Process Violations

In Count IV, Plaintiff alleges that the City's policies and practices facilitated constitutional violations in that they "deprived Plaintiff of his right to a fair trial in violation of the due process of law and deprived him of equal protection of the laws, in violation of the Fourteenth Amendments (sic) to the United States Constitution and 42 U.S.C. § 1983." (D.E. 30 ¶ 63.) Plaintiff further alleges that the City's policies and practices include, *inter alia*, "[u]se of intimidation and coercion to illicit false statements and testimony from private citizens," the "[f]ailure to properly hire, train, supervise, discipline, counsel and otherwise control police officers who engage in the abuse of police power . . .," the failure to "properly hire, train, supervise, discipline, counsel and otherwise control its employees who engage in creating and/or submitting erroneous, misleading and fraudulent DNA tests . . .," the "[f]alsification and fabrication of DNA results to facilitate the conviction" of innocent individuals, and the "[w]ithholding of exculpatory evidence . . . ." (*Id.* ¶ 58.)

As Plaintiff recognizes by styling Count IV as a "42 U.S.C. § 1983 (*Monell* claim)" against the "City of Chicago," Count IV is an action for municipal liability alleging constitutional violations as a result of a city policy or practice under Section 1983. *See, e.g., Hobley,* 2004 WL 2658075, at *8 (citing *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690-

22

91 (1978)). To hold a municipality liable under Section 1983, the plaintiff must prove that: "1) he suffered a deprivation of a federal right; 2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy making authority for the City; which (3) was the proximate cause of his injury." *Ienco*, 286 F.3d at 998 (citing, *inter alia, Monell*).

As discussed above, Plaintiff has alleged in Count IV that he was deprived of his due process and equal protection rights as a result of various "interrelated official policies, practices and/or customs" of the "City of Chicago, its Police Department, its Police Board, its O.P.S. and I.A.D., its Personnel Division and its Superintendent. . .," which "were separately and together a direct and proximate cause of the unconstitutional acts" asserted "and the injuries sustained by the Plaintiff." (D.E. 30 ¶¶ 57, 62, 63.[9]) Seventh Circuit case law establishes that such allegations sufficiently state a claim for municipal liability without the need for further detail or explication. *See, e.g., McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000); *accord, e.g., Corbett v. Biggs*, No. 01 C 7421, 2005 WL 991903, at *10 (N.D. Ill. Mar. 23, 2005). Because Holland has made allegations that sufficiently give the City notice of his municipal liability claim for alleged illicit customs, policies, or official actions, the Court respectfully denies the Defendants' motion to dismiss Count IV as it relates to Plaintiff's due process claims.[10] *See, e.g., Ruffin v. Kane County Sheriff Dept.*, No. 01 C 4898, 2006 WL 2088186, at

---

[9]   The TAC contains two paragraphs both numbered "63," and the Court quotes from the second such paragraph here.

[10]   Again, for the reasons explained above, the Court finds that Plaintiff's claims that his rights to equal protection were violated because of his race are time-barred and dismisses such claims. Therefore, to the extent that Plaintiff's *Monell* claim alleges that the City had a policy and practice of denying criminal suspects due process because of their race, such allegations may support Plaintiff's due process claims

23

*18 (N.D. Ill. July 21, 2006) (citing *Ramos v. Town of Cicero*, No. 04 C 2502, 2005 WL 1838334, at *4 (N.D. Ill. July 28, 2005), and *Frieri v. City of Chicago*, 127 F. Supp. 2d 992, 995 (N.D. Ill. 2001)).

## CONCLUSION

For the foregoing reasons, the Court respectfully denies in part and grants in part the Defendants' motion to dismiss. (D.E. 37.) To the extent that Plaintiff attempts to state a Section 1983 Equal Protection Claim in Counts III and/or IV, Defendants' motion is granted and those claims are dismissed with prejudice as time-barred. Defendants' motion to dismiss is denied as to the Section 1983 claims of due process violations alleged in Counts III and IV.

So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated:  1/8/07

---

generally as an evidentiary matter (if proven to be correct), or explain Defendants' alleged actions, but they do not support a separate claim based on alleged equal protection violations. *See generally Walden*, 391 F. Supp. 2d at 678 (where some parts of a generalized Section 1983 claim are viable and others are not, the viable portions endure and the legally defective ones are dismissed).