# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DANA HOLLAND,

        Plaintiff,

v.

CITY OF CHICAGO,
TIMOTHY CULLINAN and NANCY
PIEKARSKI,

        Defendants.

No. 05 C 3255
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**I. Background**

    Plaintiff, Dana Holland ("Holland" or "Plaintiff") initially filed suit alleging violations of state law against the City of Chicago and two Chicago Police officers, Timothy Cullinan ("Cullinan") and Nancy Piekarski ("Piekarski") on July 29, 2003 in the Circuit Court of Cook County. Plaintiff amended his complaint on April 29, 2005, when he added two federal claims. That Second Amended Complaint[1] ("SAC") brought the following claims against Defendants: malicious prosecution against the Defendant Officers ("SAC Count I"); malicious prosecution against the City ("SAC Count II"); violation of equal protection against the Defendant Officers under 42 U.S.C. § 1983 ("SAC Count III"); and a "custom and practice" claim against the City ("SAC Count IV"), which appeared to be a *Monell*-type claim. On June 1, 2005, Defendants filed a Notice of Removal of the case to this Court pursuant to 28 U.S.C. §§ 1441 (b) and (c) and 28 U.S.C. § 1446. Defendants moved to dismiss the SAC in its entirety. By order of January 23, 2006, the Court granted Defendants' motion as to Plaintiff's federal claims (SAC Counts III

---

[1] The "Second Amended Complaint" appears to have actually been the first amendment to Plaintiff's original complaint. The Court nonetheless employs the terminology used by Plaintiff in labeling his complaint.

and IV) - dismissing those claims without prejudice - and denied Defendants' motion as to Plaintiff's state law claims.

Plaintiff thereafter filed a "Third Amended Complaint" ("TAC"), which again brings malicious prosecution claims against the Defendant Officers ("TAC Count I") and the City ("TAC Count II"). The TAC also claims that Defendant Officers violated Plaintiff's equal protection and due process rights under 42 U.S.C. § 1983 ("TAC Count III") and that the City of Chicago similarly violated Plaintiff's equal protection and due process rights through certain "practices and/or customs," a claim which is now expressly styled as a *Monell* claim" ("TAC Count IV").

Defendants filed a motion to dismiss TAC Counts III and IV for failure to state claims upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). On January 8, 2007, the Court granted the 12(b)(6) motion for Counts III and IV, saying they were time-barred to the extent that they attempted to state a § 1983 Equal Protection claim, but denied the 12(b)(6) motion for § 1983 claims of Due Process violations in Counts III and IV. The case is before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

**II. Standard of Review**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers*, *Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

**III. Preliminary Issues**

Defendants object to and move to strike Plaintiff's Statement of Fact Numbers 3, 4, 5, 6, 7, and 8, which state the expert opinions of William Gaut, on the grounds that they reference an expert report which is inadmissible pursuant to Federal Rule of Civil Procedure 56(e). This rule requires that "a supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." (Fed. R. Civ. P. 56(e)). Defendants also argue that these paragraphs should be stricken pursuant to Federal Rule of Evidence 702, which requires the proponent of expert

3

testimony to demonstrate that the expert is property qualified, that the opinions are based on sufficient facts, that the methods and principles are reliable, and that the witness has reliably applied the methods and principles to the facts of the case. *See* Fed. R. Evid. 702. Defendants do not dispute Gaut's qualifications as an expert generally.

Defendants' motion to strike these paragraphs is denied. In his accompanying deposition, Gaut swears to his qualifications, authenticates the report, and discusses at length the materials he considered in formulating his opinions. "To be admissible [on a motion for summary judgment], documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2722 (3d ed.1998). For purposes of 56(e), a deposition, as sworn testimony, is comparable to an affidavit attesting to the same. *See DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 825 -826 (8th Cir. 2009) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed.R.Civ.P. 56(e).") (citation omitted). Mr. Gaut's testimony that he neglected certain facts in forming the opinions expressed in the report certainly goes to the weight of the report, but not its admissibility. However, to the extent that Gaut's report contains legal conclusions, it is deemed stricken on the ground that such testimony is inadmissible. *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *U.S. v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996) (expert witnesses "cannot testify about legal issues on which the judge will instruct the jury.").

Defendants further move to strike Plaintiff's Statement of Fact Numbers 18, 19, and 20 for failure to comply with the aforementioned Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 702. The report referred to in these paragraphs is unsworn and does not comply with Rule 56(e). Furthermore, these paragraphs should be stricken pursuant to Federal Rule of Civil Procedure 37(c)(1), which states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial. . ." As neither Mr. Keel nor Mr. Blake was identified as a witness in the case, I grant Defendants' motion to strike Plaintiff's Statement of Fact Numbers 18, 19, and 20.

## IV. Statement of Relevant Facts

On February 22, 1993, Defendant Officers responded to a report that a woman was screaming. (Def. 56.1 at ¶ 12). Defendant Officers observed a car parked in the alley behind 7739 South Paulina in Chicago, and they saw a partially clothed woman exit the passenger side of the car and run toward them. (*Id*. at ¶ 13). The Defendant Officers also saw a man exit the driver's side of the car and run away. (*Id*.) The woman, who will be referred to herein simply as Ms. Stanley, told the Defendant Officers that she had been raped. (*Id*. at ¶ 14).

Defendant Officer Cullinan pursued the man who exited the car on foot until he lost sight of him. (*Id*. at ¶ 15). Officers Mary Bonnema and Martin Tully arrived on the scene and followed footprints in the snow from the vehicle in which the alleged rape had occurred to the front door of 7821 South Paulina, Plaintiff's home. (*Id*. at ¶ 19). Ms. Stanley advised police at the scene that the offender had dropped in the alley a knife used in the assault, so Officer Cullinan walked southbound through the alley to the 7800 block of South Paulina in search of the

5

knife. (*Id.* at ¶¶ 18, 21 ). As Cullinan was walking through the alley, he encountered Plaintiff standing over a garbage can at 7821 S. Paulina, holding a pair of pants with cartoons on the waistband and containing Plaintiff's identification. (*Id.* at ¶¶ 22, 23, 26, 27).

Officer Cullinan walked Plaintiff back to the scene to conduct a "show up" before Ms. Stanley. (*Id*. at ¶ 31). At the show up, and in the presence of Plaintiff, Ms. Stanley initially indicated that Holland was not her attacker. (*Id*. at ¶ 32). After a conversation with a female police officer, Ms. Stanley identified Dana Holland as her attacker. (*Id*.) Plaintiff disputes this interpretation of events, asserting that there was no "conversation" between Ms. Stanley and an officer, but rather that Officer Piekarski gave Ms. Stanley false information about the evidence at the scene before coercing Ms. Stanley into identifying Holland.

Also at the crime scene, Officer Piekarski ran a check on the license plate of the car where the attack took place and discovered that the registered owner of the car lived at the same address as Plaintiff. ( Def. 56.1 at ¶ 35.) Additionally, officers recovered a pair of wet, black, LA Gear tennis shoes from Plaintiff's residence which matched the impressions in the snow leading from the vehicle used in the assault. (*Id*. at ¶ 36). Following this investigation and the show-up identification, Plaintiff was arrested. (*Id*. at ¶ 38).

Subsequent to Plaintiff's arrest, Detective Jimmy Marbury interviewed Plaintiff's alibi witnesses, an aunt and a cousin, whom Plaintiff claimed could verify that he was home on the night of the attack. (*Id*. at ¶¶ 40, 41). The aunt told Detective Marbury she was not sure whether Plaintiff was home and the cousin said he was at work from midnight to 8:00 a.m. (*Id*.) Detective Marbury investigated an alibi provided by Shirley Bolden, Holland's cousin, that she had sent Plaintiff to the store at 3:00 a.m., however an interview with the store owner revealed

that the store closed at 2:00 a.m. (*Id*. at ¶ 42). After hearing testimony from Detective Marbury, as well as Plaintiff's uncle, a Grand Jury returned a true bill of indictment against Plaintiff for the rape of Ms. Stanley. (*Id*. at ¶¶ 43, 47).[2]

In 1993, a box containing two swabs marked "vaginal" was received by the Chicago Police Department Crime Laboratory. (Def. Response to Plf. Statement of Additional Facts at ¶ 22). Employees of the City of Chicago conducted a comparison of Plaintiff's DNA and DNA collected as part of the investigation into the rape of Ms. Stanley. (*Id.* ¶ 64). The City employees concluded that the sample could not be compared to a suspect due to a lack of DNA profile, and thus the DNA comparison did not exclude Plaintiff as the potential rapist of Ms. Stanley. (*Id.* at ¶ 66).

On April 1, 1997, Plaintiff was tried for the rape of Ms. Stanley. (*Id*. at ¶ 55). Ms. Stanley testified at trial, identifying Plaintiff as her assailant, and indicating that her assailant wore jeans with cartoon designs. (*Id*. at ¶¶ 56, 58). Plaintiff's attorney interviewed Ms. Stanley regarding her identification of his client, and cross-examined her at trial on this subject after she indicated that she initially denied Plaintiff was her attacker because she was afraid. (*Id*. at ¶¶ 57, 59). Plaintiff was convicted of three counts of rape and sentenced to three consecutive 30-year sentences. (*Id*. at ¶¶ 61, 62).

In 2002, a vaginal swab sample was tested by Orchid Cellmark using a "13 STR loci" test, which was entirely different from the DQ Alpha and Polymarker tests used earlier by the

---

[2] Plaintiff objects to the inclusion of all the facts in the preceding paragraph on the basis that they are not relevant to the issues in this case, however, given that probable cause to prosecute is an integral element to Plaintiff's Malicious Prosecution claim, and subsequent investigation and Grand Jury indictment certainly speak to probable cause for prosecution, Plaintiff's objection is without merit.

City. (*Id*. at ¶ 74). Orchid Cellmark's testing excluded Plaintiff as the contributor of the spermatoza sample on the vaginal swab from Ms. Stanley, and implicated Plaintiff's uncle, Gordon Bolden. (*Id*. at ¶ 78).

Plaintiff's conviction for the rape of Ms. Stanley was vacated in 2003. (*Id*. at ¶ 79). In June, 2003, Plaintiff first filed suit against the Defendants in this case. In January of 2007, judgment was rendered on Defendants' 12(b)(6) motion to dismiss. The case is now before this Court on Defendants' motion for summary judgment.

## V. Discussion

### A. Plaintiff cannot prove all of the elements of a Malicious Prosecution Claim (Counts I & II)

To prevail on a claim for malicious prosecution, a plaintiff must prove five elements: (1) that defendant commenced or continued either a criminal or a civil action against plaintiff; (2) that action terminated in favor of the plaintiff; (3) defendant lacked probable cause for such a proceeding; (4) the presence of malice; and (5) damages. *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 45, 411 N.E.2d 229 (1980). Absent any one of these elements, summary judgment in defendant's favor is appropriate. *Id*. Plaintiff cannot prevail on the malicious prosecution claims against Defendant Officers and the City of Chicago because he cannot prove that Defendant Officers initiated the prosecution, lacked probable cause to arrest, acted with malice toward Plaintiff, or that there was no probable cause to prosecute.

### 1. Defendant Officers did not Initiate the Prosecution

Plaintiff argues that, although the State's attorney initiates a criminal proceeding, police officers "often take the first step toward prosecution when they make an arrest." *Reed v. City of*

8

*Chicago*, 77 F. 3d 1049, 1053 (7th Cir. 1996). Where there is an indictment, a police officer can only be held liable if he pressured, influenced, or made a knowing misstatement to the prosecutors. *Id*. In order to prove malicious prosecution against arresting officers, a plaintiff must demonstrate that "the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *McDade v. Stacker*, 106 Fed. Appx. 471, 475, 2004 WL 1662258, at *4 (7th Cir. 2004). Where the alleged concealment or fabrication played no role in the initiation and continuation of Plaintiff's prosecution, summary judgment must be granted for Defendants. *Cervantes v. Jones*, 23 F. Supp. 2d 885, 881-91 (N.D. Ill. 1998).

There is no dispute as to the facts that Defendant Officers had probable cause to believe Ms. Stanley had been raped, and that the rapist had fled the scene. (Pl. Resp. To Def. Rule 56.1 Stmt. at ¶¶ 13, 14). Nor is there any dispute that footprints led from the scene to Holland's home (*Id*. at ¶¶ 19, 20); that wet shoes matching the footprints in the snow were found inside Holland's home (*Id*. at ¶ 36); or that Holland was found behind his home, shortly after the attack, holding a pair of pants which matched the victim's description of the rapist's pants and which contained Holland's identification. (*Id*. at ¶¶ 17, 21, 22, 23, 26, 27). A reasonable finder of fact would clearly find this to be a "state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Adams v. Sussman*, 292 Ill. App. 3d 30, 42 (1st Dist. 1997) (citation omitted).

Plaintiff maintains, however, that the circumstances surrounding Ms. Stanley's identification of Plaintiff negates any probable cause Defendant Officers might have had to make

9

the arrest. First, they claim that Ms. Stanley "told Defendants two or three times that Holland was not her attacker," and that the police did not accept her initial answer. This mischaracterizes the referenced portion of Ms. Stanley's testimony. She stated that she was asked two or three times whether Holland was her attacker, but does not state that she answered each inquiry. Next, Plaintiff claims that the officers gave her "false" information in order to coerce an identification, including that footprints left by the attacker matched shoes in Plaintiff's possession and that Plaintiff was found throwing his clothing in the garbage can. The shoes that Holland was wearing at the time did not match the footprints and, according to Plaintiff, he dropped his clothes in the garbage because he was told to put his hands up while he stood over a garbage can. But these particulars do not "falsify" the alleged statements. The shoes that did match were found in Holland's home, at the end of the footprint trail. It is not unreasonable for police at the scene to infer that Holland was throwing out the clothes he was holding in light of the fact that he was standing over the garbage can about to throw out trash.

Although it is disputed that the officers made these statements to Ms. Stanley, this is not material to the issue presented here. Plaintiff's claim turns on allegations that Ms. Stanley was subject to threats and coercion, and that she felt too threatened to truthfully explain that Holland was not her attacker. Ms. Stanley testified that after she initially told the police that Holland was not her attacker, one of the officers tried to reassure that she was "in goods hands," "safe," and that "he couldn't hurt [her] anymore." Ms. Stanley testified that all she wanted was to go home, and that the police had told her that she would not be able to do so until she identified Holland.

But after she did so, the police "made" her go to the emergency room.[3] This testimony hardly seems to suggest an environment of threat or coercion.

According to Plaintiff, Ms. Stanley felt under threat not only at the time of the identification but throughout the four years that followed, up through the time of trial.[4] During her direct examination, Ms. Stanley testified that initially she did not identify Plaintiff as her attacker "because [she] was afraid." Ms. Stanley continued that the "lady officer" spoke with her and "she said if that was him I didn't have to be afraid, he couldn't hurt me anymore, and I started to cry some more." Then, she testified, she identified Plaintiff as her attacker, "because he was the man that raped me." According to Ms. Stanley's testimony at trial, the police never told her to identify Holland. Plaintiff now maintains that all of this testimony was given under continuing threat. Plaintiff uses a metaphor to demonstrate his point: "Where an officer tells a victim, 'I will kill you if you tell the truth,' until the officer un-does the threat, it is reasonable for that victim to lie until she feels it's safe to tell the truth." But the threat that Ms. Stanley complains of in her deposition testimony was not being able to go home until she identified

---

[3] Not only had Ms. Stanley been attacked and raped, but she had volunteered to the Officers that she had been using drugs that day. It is difficult to construe the fact that they took her to the hospital instead of to her home as anything other than concern for her safety. During her trial testimony, Ms. Stanley explained that she had lacerations to her knees, scratches on her neck and tenderness in her pelvis as a result of the attack.

[4] Plaintiff initially sued the prosecuting attorney alleging coercion of the victim, but this claim was dismissed on the basis of prosecutorial immunity. With respect to the decision to prosecute, Plaintiff does not deal with the fact that from a reasonable prosecutor's perspective, he proffered a phony alibi and offered incredible testimony to support it. Even if the alibi evidence was not offered, the ineffective attempt to create an alibi is itself admissible evidence of guilt at trial.

There is no question that a better investigation of the DNA should have been done if it was reasonably available (I express no view on the question of whether a different form of testing would be constitutionally required). The fact remains that Plaintiff's family, and possibly even Plaintiff himself, if he knew that his uncle was indeed involved in the crime, may have contributed substantially to his wrongful incarceration.

Holland. Once she did go home, presumably within hours of the attack, it is unreasonable to infer that the threat continued over the subsequent four years.[5]

Plaintiff argues that the police withheld all of this "critical information" from the prosecutors. Even were I to assume that Ms. Stanley did feel threatened and that these feelings continued up through the time of trial, this alleged concealment still cannot tie the Defendant Officers to the prosecution. Where the alleged concealment or fabrication played no role in the initiation and continuation of Plaintiff's prosecution, summary judgment must be granted for Defendants. *Cervantes*, 23 F. Supp. 2d at 888-91 (N.D. Ill. 1998). Here, Ms. Stanley did not testify before the grand jury, nor was any specific information regarding her on-scene identification provided to the grand jury.[6] Therefore, the identification could not have played any role in the grand jury's decision to indict. In light of the circumstances of the Plaintiff's arrest and the fruits of the subsequent investigation, no reasonable finder of fact could find that Defendant Officers coerced Ms. Stanley for a period of years, concealed this fact from prosecutors, and by doing so, essentially "initiated" the prosecution against Plaintiff. Any chain of causation between Plaintiff's prosecution and Defendant Officers was broken by an indictment obtained without the introduction of the allegedly faulty identification. *See Reed*, 77 F.3d at

---

[5] Plaintiff also claims that four years after the incident, "Ms. Stanley was picked up by police officers and held in Cook County jail for 30 days so she would be 'available to testify' against Dana Holland at his trial." This, Plaintiff maintains, was part of the coercion. However, Ms. Stanley was picked up in Milwaukee, by Milwaukee police, on a warrant for a charge of property damage. She testified that was sent to Chicago where she was held in custody for thirty days, at which point she testified at Holland's trial. Two days later, she appeared in court on her property damage claim. Plaintiff does not allege that Defendant Officers Cullinan and Piekarski were involved in this incident, so this cannot be a basis for their liability. Because the malicious prosecution claim against the City is a vicarious liability claim, based on the actions of Officers Cullinan and Piekarski, liability against the City on this basis is also foreclosed.

[6] Detective Marbury did testify that he learned the facts of the case from "interviews with the victim and witness[,]" but there was no mention at all of an identification.

1053 ("the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor.").

## 2. State had Probable Cause for Prosecution

Plaintiff exclusively addresses the probable cause element of his Malicious Prosecution claim by arguing lack of probable cause for arrest. As discussed *supra*, Plaintiff's argument against probable cause for arrest is unsuccessful,[7] as is his argument tying the Defendant Officers to the indictment. Moreover, the continuation of the criminal action against Holland was not based solely on his arrest. In fact, information gained after Holland's arrest supported probable cause for the prosecution, including the interviews of several witnesses who failed to provide a verifiable alibi. (Defendant's 56.1 at ¶¶ 41, 42). This information is contained in a supplemental police report. Plaintiff denies the statements of the alibi witnesses, claiming lack of information. However this does not a triable issue of fact make. "[A] motion for summary judgment requires the responding party to come forward with the evidence that it has - it is the put up or shut up moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 766 -767 (7th Cir. 2009) (quotations and citation omitted). Plaintiff knew of the existence of the investigative report and its contents, and has produced no evidence to refute it. His denial is without foundation and he introduces no evidence in support of his claim that there was no probable cause to prosecute. Thus, given Plaintiff's failure to dispute any of the facts giving State probable cause to prosecute Holland, a reasonable finder of fact would not find in his favor on this element.

---

[7] Even without Ms. Stanley's identification, there was probable cause for Holland's arrest in light of the facts that he was found at the scene acting suspiciously, a trail of footprints from the scene lead to his home, the matching shoes were found inside, and Holland was the only male resident present at the time.
Given Plaintiff's contention that it was his uncle who perpetrated the offense, it is possible that, in addition to his location at the trash can behind his home, his demeanor may have reflected guilty knowledge in ways that are difficult for anyone to articulate, although the guilt of which he might have been aware was that of a family member.

### 3. There Is No Evidence of Malice toward Plaintiff

Plaintiff mischaracterizes several of Defendant Officers' communications with the victim at the scene as lies in order to show alleged bad faith on the part of the Officers and therefore, lack of probable cause to arrest – which in turn, he argues, is sufficient to infer malice. A reasonable finder of fact would not overcome the difficulty of jumping through this number of hoops to reach malice in any case, but Plaintiff does not alleviate this difficulty by mischaracterizing certain facts of the case and in some instances failing to cite to any facts at all. (Plf's Rspnse. to Def's MSJ, 8, *see also* Plf's 56.1 ¶¶ 11, 12, 13).

### B. Defendants Are Entitled to Immunity Under the Illinois Tort Immunity Act

Defendants are further entitled to immunity under Section 2-202 of the Illinois Tort Immunity Act, which provides that "a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct" (745 ILCS 10/2-202), and that "a local public entity is not liable for an injury resulting from an act or omission of its employees where the employee is not liable." 745 ILCS 10/2-109. Plaintiff offers the same arguments for the alleged "willful and wantonness" of Defendant Officers' conduct as he offered for malicious prosecution. Thus, Defendant Officers' conduct is not "willful and wanton" for the same reasons that it is not considered malicious, *supra*.

In addressing a motion for summary judgment, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Here, Plaintiff fails to establish any genuine issues of material fact on the issue of malicious prosecution against Defendants Cullinan, Piekarski, or City of Chicago, and any assertions he makes in an attempt to do so do not rise above the level of

conclusory, unsupported allegations this court admonished in *Pauley*. Accordingly, because Plaintiff cannot establish all of the elements of a malicious prosecution claim, and further because both Defendant officers and the City are entitled to statutory immunity, Defendants' motion for summary judgment is granted as to Counts I and II.

### C. Due Process Claim (Counts III & IV)

Counts III and IV of Plaintiff's TAC assert a Fourteenth Amendment due process claim, alleging the suppression of exculpatory evidence in Holland's trial. In order to establish a due process claim, a plaintiff must show that an individual defendant suppressed evidence which was favorable to the defense and material to an issue at trial. *Ienco v. Angarone*, 429 F. 3d 680, 683 (7th Cir. 2005). "The government will not be found to have suppressed information if that information was available to the defense through the exercise of reasonable diligence." *U.S. v. Hamilton*, 107 F.3d 499, 510 (7th Cir. 1997).

For personal liability to attach in a civil rights action, Plaintiff must prove that Defendant Officers personally participated in or caused the constitutional deprivation. *Alejo v. Heller*, 328 F. 3d 930, 936 (7th Cir. 2003). Here, Plaintiff has not set forth facts establishing that Officers Cullinan or Piekarski were personally involved in withholding evidence, nor that the evidence allegedly withheld was material and exculpatory. The two evidentiary issues in contention in this due process claim are the on-scene identification of Holland and the DNA evidence from the victim's rape kit, neither of which is shown to be material and exculpatory or purposely suppressed by Defendants.

#### 1. On-scene Identification

Plaintiff expends a great deal of effort to show that the circumstances of his on-scene identification were suppressed, but gives short shrift to the important qualifications that the

16

evidence allegedly withheld must be both material and favorable to Plaintiff. *Ienco*, 429 F. 3d 680, at 683. Plaintiff relies heavily on the assertion that, although Holland's attorneys had access to the victim before trial, they were somehow unaware of the true circumstances of the victim's identification of Holland as her rapist, and assumes this in the absence of affidavits from those attorneys. Plaintiff again refers to Defendant officers' "coercion" of Ms. Stanley into identifying Holland, however Ms. Stanley only accuses "a female officer," that she could not identify further, of making the statement that she would remain in the officers' custody until she identified Holland. (Def's Rspnse. ¶ 10.)

This argument suffers on several levels: (1) the accusation of a female officer making the statement not only excludes Defendant Officer Cullinan, but is too broad for any reasonable finder of fact to say with certainty that it inculpates Defendant Officer Piekarski; (2) Ms. Stanley was, in fact, cross-examined on her change in story during the trial. The "threat" that Plaintiff repeatedly points to as supposedly continuing to coerce Ms. Stanley into lying was, in Plaintiff's own words, that victim would remain in police custody until she identified Holland. (Plf. 56.1 at ¶ 10.) However, a reasonable finder of fact could not infer that any threat Ms. Stanley felt that she could not return home immediately after her rape would continue to compel her false testimony at trial, years later.

Plaintiff contends that had he known about the "serious threat" made by Defendants, he would have called Defendant Officer Piekarski to testify at trial. However, in light of Officer Piekarski's deposition testimony, it is unclear how her testimony at trial would have exculpated Holland. Plaintiff has failed to prove that either Defendant Officer actually suppressed evidence of a coercion.

### 2. DNA Evidence

In this case, there is no evidence presented whatsoever that Defendant Officers Cullinan or Piekarski had any involvement with the Chicago Lab, which processed Plaintiff's DNA evidence. The City of Chicago is not a Defendant in Count III, in which the due process violation from suppression of DNA Evidence is alleged, because a municipal entity can only be held responsible for such conduct under a *Monell* claim. The fact that Plaintiff's do not allege or attempt to show that the Defendant officers had any hand in the alleged suppression of DNA evidence supports my determination that no reasonable finder of fact could find Defendant officers guilty of an obstruction of due process on these facts.

### 3. Monell Policy Claim

A municipality will be liable under § 1983 if a plaintiff can prove "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007).

Plaintiff argues that there is a triable question of fact as to whether there was a widespread practice at the Chicago Crime Lab of misrepresenting the scientific significance of DNA test results. Plaintiff's entire argument in support of his *Monell* claim relies on material that was stricken from the record, as discussed *supra*. Plaintiff provides no further evidence of such a widespread practice, and for this reason, Defendants' motion for summary judgment is granted as to Count IV.

## VI. Conclusion

For the foregoing reasons, I grant summary judgment on all counts in favor of Defendants Cullinan, Piekarski, and City of Chicago.

ENTER:

*James B. Zagel*

James B. Zagel

United States District Judge

DATE: November 2, 2009